CHARLES K. CLARKE *et al. vs.* WILLIAM H. JOSLIN *et al.*

JULY 3, 1912.

PRESENT: Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1) Elections. Ballots. Quo Warranto.*

Where in a petition in equity in the nature of *quo warranto* bringing in question the title to the offices of town council and tax assessor, it appeared that the town council did not mark as "defective" the rejected ballots, nor separate them, but placed all the ballots in a sealed package, the court cannot open the package and review the action of the town council, as the ballots cannot be identified, nor upon the allegations in the petition, assume the functions of the town council and recount the vote.

*(2) Elections. Ballots. Quo Warranto.*

Upon a petition in equity in the nature of quo warranto bringing in question the title to the offices of town council and tax assessor, without examining the ballots, evidence of witnesses as to the "defective" ballots heard and:—

*Held,* that more than 16 and less than 25 ballots cast for petitioners were illegally rejected and claims of certain of petitioners to the offices sustained.

*(3) Elections. Ballots. Distinguishing Mark.*

A ballot having one line of the (X) crossing, but not extending to the same length as the other line, producing a mark to a certain extent resembling the letter "Y," is not invalid as constituting a distinguishing mark.

(4) *Elections. Ballots. Distinguishing Mark.*

A ballot having a so-called "hook" consisting of a slight curve at the top of one of the lines forming the (X), is not invalid as constituting a distinguishing mark.

PETITION IN EQUITY in nature of quo warranto. Relief granted.

SWEETLAND, J. This is a petition in equity in the nature of *quo warranto* brought under the provisions of Chapter 328, Gen. Laws, 1909. It brings in question the title to the offices of first, third, and fourth member of the town council and of the assessor of taxes for three years in the town of Scituate.

At the annual election of the town officers in said town, held on May 15, 1912, the petitioners were the regular republican candidates for said offices as follows: Charles K. Clarke, Frank F. Brown and Joseph B. Round were candidates for the offices of first, third and fourth member of the town council, respectively, and Benjamin Wilbur was a candidate for the office of assessor of taxes for three years. At said election the respondents, William H. Joslin, Frank H. Wilbur and George O. Rathbun were the regular democratic candidates for the offices of first, third and fourth member of the town council, respectively, and Manuel F. Williams was the regular democratic candidate for said office of assessor of taxes for three years. There were no other candidates for either of said offices. At the official count of the ballots cast at said election, made by the town council, the respondent, William H. Joslin, was declared elected to the office of first member of the town council by a majority of one vote; the respondent, Frank H. Wilbur, was declared elected to the office of third member of the town council by a majority of fourteen votes; the respondent, George O. Rathbun, was declared elected to the office of fourth member of the town council by a majority of twenty-six votes; and the respondent, Manuel F. Williams, was declared elected to the office of assessor of taxes for three years by a majority of fifteen votes.

The petitioners claim that the town council in making its official count refused to count in favor of the petitioners certain ballots, "in each instance approximately twenty-six ballots," which were legally cast at said election in favor of the petitioners. It appeared at the hearing upon this petition that said town council did refuse to count certain ballots cast at said election in favor of the petitioners, on the ground that the elector casting each of said ballots had placed a mark upon his ballot by which it might be afterwards identified as the one voted by him.

The said town council did not mark as "defective" the said ballots so rejected by them, nor did they separate said ballots from the others cast at said election; but placed all the ballots cast in each voting district in the town in separate sealed packages. It is, therefore, impossible at this time to determine with exactness the number of ballots so rejected or to identify them, so that the court may scrutinize the so-called distinguishing marks, which said town council determined that the voters had placed upon these ballots. In the circumstances of the matter we consider the action of the town council as most reprehensible in thus mingling the ballots which were counted with those rejected, and placing this obstacle in the way of a review of their action by the court. The petitioners have offered in evidence these sealed packages and have requested the court to open the packages and recount the votes cast at said town election. We cannot do that in this proceeding. By the allegations of their petition and by their testimony before us the petitioners contest the title of the respondents to the offices in question on the ground that certain ballots, about twenty-six in number, cast in favor of the petitioners were not counted, on the ground that they bore what were called distinguishing marks. Under this claim we would examine the ballots if they could be identified and presented to us; and from such inspection we would review the legality of the action of the town council in thus rejecting them. But, because it is impossible to present that evidence to us, we

cannot search through the packages and select a number "approximately twenty-six" which upon conjecture we conclude are the ballots rejected, and then inspect the marking upon the ballots so selected. Neither can we upon the allegations in this petition assume the functions of the town council and recount the whole number of votes cast at said election.

We have permitted the parties to present the testimony of witnesses who represented the petitioners and the respondents before the town council and who were permitted to examine the ballots at the time they were rejected. We have also received the testimony of members of the town council. These witnesses have testified as to the number of ballots cast for the petitioners which were rejected and they have testified as to the nature of the so-called distinguishing marks. It was testified to by witnesses for the petitioners and not denied that the number of ballots rejected were seven in voting district number 1 and nineteen in voting district number 2; that of this number all but two or three were ballots cast for the petitioners. We therefore find that twenty-three or twenty-four votes cast for the petitioners were not counted. From the testimony presented on both sides it appears that nearly all the twenty-six votes rejected were so rejected because of certain so-called distinguishing marks, described as "hooks" by the witnesses. And a few were rejected because the voters had used "Y" shaped marks instead of crosses as voting marks. There was testimony given by witnesses for the respondents of other so-called distinguishing marks or of instances of failure on the part of the voter to use the voting mark prescribed by statute. Some of the witnesses for the respondents while upon the witness stand, reproduced upon paper these distinguishing marks as they remembered them to be. As to some of these marks the action of the town council in not counting the ballots appeared proper; but it was clear from the testimony that more than sixteen of the ballots cast for the petitioners were rejected because of the so-called

"hooks" and "Y" shaped voting marks. From the testimony of the witnesses and the drawings which some of them made, we are of the opinion that the so-called "hook" was not a mark placed upon his ballot by the voter by which it might afterwards be identified as the one voted by him.

(3) This so-called "hook" consists of a slight curve at the top of one of the lines forming the cross. It is such a curve as might naturally and unintentionally be made by a voter, by a slight turning of the pencil, in making the lines of the cross; probably in most instances in making the first line drawn.

We are of the opinion that the so-called "Y" shaped mark made by some of the voters in marking their ballots was a compliance with the requirements of the statute as to

(4) the form of voting mark. The statute provides that one line crossing another at any angle shall be deemed a valid voting mark.

By the testimony of witnesses for the petitioners and from the drawing of these marks upon paper by the respondents' witness, Mr. Angell, president of the town council, it appeared that this mark was made by one line crossing another, but not extending to the same length as the other; thus producing a mark which to a certain extent resembled the letter "Y." From the testimony and the drawings made by other witnesses for the respondents the lines did not cross, but from a consideration of all the testimony we find that in these marks there was a crossing of the lines. As we are not enabled to examine the marks themselves, even upon less convincing testimony than that presented to us in favor of counting these ballots, we should refuse to defeat the intention of the voter upon this ground.

We therefore find that more than sixteen and less than twenty-five of the ballots which were cast for the petitioners at said election were illegally rejected by the town council and not counted for the petitioners. In this state of the facts the claim of the complainant, Round, as to the office of fourth member of the town council is not supported. So

far as the petition relates to the office of fourth member of
the town council we find that the respondent, George O.
Rathbun, was elected to that office and is entitled thereto.
As to that office the petition is denied and dismissed.·

As to the petitioners, Clarke, Brown and Wilbur, we find
that they were elected to the offices of first member of the
town council, third member of the town council, and assessor
of taxes for three years, respectively, and that each is en-
titled to said office respectively.

A decree may be entered on July 6th, at ten o'clock A. M.,
in accordance with this opinion.

*Wilson, Gardner & Churchill,* for petitioners.
*Willis B. Richardson, Arthur E. Munro,* for respondents.